THE STATE v. THOMAS, R. J., *Appellant.*

### Division Two, March 10, 1897.

1. **Murder:** PRACTICE: INSTRUCTIONS.  An instruction must be read as a whole, and if, when so read, it explains fully the words and legal phrases used therein, it will not be considered open to the objection that it uses clauses which are not properly defined.

2. ——: ——: ——.  A case stated in which the evidence justified the giving of the instruction: "Mere threats, however, in the absence of an attempt to execute them, will not justify, on the ground of self-defense, the shooting of one by another, nor will threats alone warrant the party against whom they are made, in attacking and killing the party who made them."

*Appeal from St. Louis Criminal Court.*—HON. THOMAS B. HARVEY, Judge.

AFFIRMED.

*J. R. Claiborne* and *G. N. Fickeissen* for appellant.

(1)  Instruction number 4 given by the court is erroneous, in that it does not define what is "a reasonably sufficient length of time to cool."  (2)  Instruction number 8 is erroneous, because the court instructs the jury that they "may" and not that they "shall" consider any threats made by deceased against appellant.  (3)  Instruction number 8 is erroneous because it tells the jury: "Mere threats, however, in the absence of an attempt to execute them, will not justify on the ground of self-defense the shooting of one by another, nor will threats alone warrant the party against whom they are made in attacking and killing the party who made them."  There was no evidence on which to base this instruction.  (4)  There was evidence of "uncommunicated threats" and the court ought to

have instructed the jury that if they believed such threats had been made, they should be considered in passing upon the conflicting testimony as to who was the aggressor in the difficulty which led to the death of Burns.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) There is no failure of proof in the case such as will warrant a reversal because of insufficiency of testimony. *State v. Banks*, 118 Mo. 121; *State v. Fischer*, 124 Mo. 462. (2) Appellant urged as a third reason for a new trial that the court erred in giving instructions of its own motion. It is the duty of the court in plain and concise language to define an offense accurately and give all proper instructions necessary. *State v. McCaskey*, 104 Mo. 648; *State v. Palmer*, 88 Mo. 573; R. S. 1889, sec. 4208; *State v. Maguire*, 113 Mo. 670; *State v. Nelson*, 118 Mo. 126. (3) No specific objections were made by the defendant in the trial court to any part of the testimony on behalf of the State so far as the records show. The law is, that unless objections and reasons therefor are specifically set out in the record, they will be disregarded in the appellate court. *State v. Moore*, 117 Mo. 395; *State v. Hope*, 100 Mo. 354.

BURGESS, J.—From a conviction of murder in the second degree in the St. Louis criminal court at the March term, 1896, and the fixing of his punishment at ten years' imprisonment in the penitentiary, for having at said city on the night of June 30, 1895, shot to death with a pistol one James Burns, defendant appealed.

During the day of June 30, 1895, deceased and defendant had several personal encounters, and one in

the saloon of Isom & Petts on the night of the homicide, before it occurred. After the first difficulty in the saloon that night, deceased left and returned again between 11 and 12 o'clock with two officers.

The evidence on the part of the State showed that one of the officers, Bollinger, asked Burns if he wanted Thomas arrested. Burns said no. Bollinger then ordered both defendant and deceased out of the saloon. Burns went out, and after having washed his face returned to the saloon.

Thomas also went out, and into a grocery store near by, and in a very short time returned with a pistol in his hand, and asked who it was that was looking for him. Officer Bollinger then took hold of defendant and, while backing him up against the ice box in his effort to take the pistol from him, deceased remarked to Thomas: "You have been beating me all day and you might as well make a job of it." Defendant at once fired the pistol and Burns fell dead, as the result. Burns was unarmed at the time.

Officer Bollinger testified as a witness on behalf of defendant that he was in the saloon on the night of the homicide, and separated Burns and defendant. That he then left the saloon and did not return again until he heard a shot fired, and that when he did return he found Burns lying on the floor dead, and that he then placed defendant under arrest.

Defendant testified in his own behalf, admitted the shooting, but claimed that it was done in self-defense; that he and Burns had had four different difficulties on that day, and that while he, Thomas, was standing with his head down behind the counter, Burns approached him with a revolver in his hand, and that in order to preserve his own life he picked up a revolver and shot Burns.

Defendant proved a good character for peacefulness and quietness in the neighborhood in which he lived.

The first point insisted upon by defendant for a reversal of the judgment is that the court did not define "what is a reasonable length of time to cool." We take it that what is meant by this insistance is, that the court should have defined what is a reasonable length of time "for hot blood and passion to have cooled and subsided," for such is the language used in the instruction. The question was one of fact, and when the instruction is read as a whole, as it must be, nothing by way of explanation was necessary, as it is very full and explicit. It explains itself.

Instruction numbered 8 is criticised because it tells the jury that they "may," and not that they "shall" consider any threats made by deceased against defendant. No suggestion or argument has been made in support of this contention, and we must confess our inability to see the force of it. In fact, we think "*may*" much the better word in such circumstances.

A further criticism is made on this instruction because it tells the jury: "Mere threats, however, in the absence of an attempt to execute them, will not justify, on the grounds of self-defense, the shooting of one by another, nor will threats alone warrant the party against whom they are made in attacking and killing the party who made them." While it is insisted that there was no evidence justifying the giving of that instruction, it is at the same time contended that there was evidence of "uncommunicated threats" and that the court ought to have instructed the jury that if they believed such threats had been made, they should be considered in passing upon the conflicting testimony as to who was the aggressor.

If no threats were made by deceased against defendant the instruction was harmless; but even if there were uncommunicated threats, no error was committed in failing to instruct the jury that they should be considered by them in determining who was the aggressor, for the very obvious reason that the evidence conclusively showed that deceased was unarmed, and making no demonstrations of violence toward defendant, at the time he was shot by him.

The defendant had a fair trial, and his conviction was fully justified by the evidence.

The judgment is affirmed. All of this division concur.